The final case on for argument this afternoon, yeah this morning, we're still in the morning, is United States v. Saudio. Good morning Mr. Thomas. Good morning your honors. May it please the court, Ross Thomas for the appellant Akiba Saudio. The sole issue on appeal is whether the district court abuses discretion by failing to articulate its rationale for decision in ruling on a motion for a sentencing reduction. This court has confronted this issue on several separate occasions. Most importantly, it's addressed the issue in Christie. In Christie, this court held that reasons were required for that particular circumstance. It carved out a narrow exception suggesting that reasons may not be required in circumstances where you get a proportional sentencing reduction. That the error would be harmless because you could infer the reasons from the record. And that relied on an unpublished decision, Batista. Following those decisions, the Supreme Court issued its decision in Chavez Mesa. In that particular case, no further reasons were required outside of the AO 247 form. It was a disproportionate or non-proportional sentencing reduction in that case. However, to reach its conclusion, the Supreme Court could have adopted a number of different approaches. It could have adopted the Tenth Circuit's approach in that case saying that, well, reasons are never required. This court in Christie did not agree with that and the Supreme Court, while it didn't decide it, didn't rely on that rationale. The Supreme Court also could have said, well, there is something special about whether something's proportional or non-proportional. But even in non-proportional cases, we can infer the reasons from the record. But what the Supreme Court actually did was say that there isn't anything magical about proportionality. First, it's difficult to figure out when a sentence is roughly proportional. But it also said that when a district court imposes a sentence, what it's doing is considering the guidelines but also the 3553A factors. Does the fact that there's nothing magical about proportionality cut for you or against you? I believe it cuts for us. How? So the Supreme Court decided only a very narrow, its holding is very narrow. It's only in that particular circumstance the appellate court was not required to remand it. But it left broad discretion to appellate courts to fashion what it is appropriate to consider more reasons. So the only thing that I really read into Chavez-Mesa is that it would be inappropriate to rely on proportionality. But everything else about that this court has said is still good law. So in Christie, it was really focusing on pretty much in every case reasons would be required. We had a pretty full, as I recall the record, a full sum sentencing proceeding when Mr. Sadio was initially sentenced, correct? That is correct, Your Honor. The judge went through a number of factors and obviously indicated, and it was Judge Thompson? It was, Your Honor. Indicated that, I mean, he understood and balanced the factors and gave his first sentence. We don't have to presume that Judge Thompson forgot everything he knew about Mr. Sadio when he fashioned the sentence reduction here, do we? I don't believe so, Your Honor. But what's different about this particular case is when he went through the factors originally, what he focused on was Mr. Sadio's risk of recidivism. And following that, we focused on all of the programs that he did following the imposition of the sentence. Judge Thompson knew he had a mixed record while incarcerated. That's correct. It is mixed, but it creates what I believe to be a factual dispute about how extensive were his efforts at rehabilitation. Indeed, in the government's brief, I think it says this three times, Mr. Sadio had four disciplinary tickets at first for not going to work. And the comment was that we never provided any explanation for this. And I disagree. I think we did. Our explanation was that Mr. Sadio elected to be in protective custody for his own safety. And that when he was in protective custody, he couldn't actually, he couldn't work. And that creates a factual dispute. How to read that or what do we infer from those facts that he elected to be in protective custody and that he didn't go to work? Why do you think Judge Thompson didn't consider all that material? It was in, I think, at least three PSR addenda, right? So I don't think that, I'm not suggesting that Judge Thompson didn't actually consider it. But what I want to know and what I think the public needs to know is how he, in fact, considered it. One of the quotes from Christie was quoting a Seventh Circuit case. And it's not, what that Seventh Circuit case said is it's not sufficient to say that I have considered these things. We want to know how they were considered. The reasons don't. Why is that? What does that mean? What I believe that means is not saying that I, it's tailoring those factors to this particular individual. This is just a findings about his conduct in prison and how that bared on his original analysis. Isn't that coming pretty close to the talismanic incantations which we say district judges don't have to engage in? Right. I think the form are those talismanic incantations. But what I'm asking for is what factors it's still considered important and the facts underlying it that drove the decision. But if at the original sentencing he just said, Judge Thompson said, I've got some certificates of completion of courses and a prior prison sentence and I've also got some disciplinary reports. There's no requirement that he conclude, okay, as a result I find that he has done a lousy job in prison or I found that he's done a good job in prison. You can just say I considered it. That would have been sufficient at the original sentencing, right? In the ordinary case, I would say, yes, it would be sufficient. It certainly would have been sufficient in the context of a re-sentence. But what I think the distinction, yes, in the ordinary case, but I think the distinction would be in cases where you really are focused on assessing how this person is going to perform outside of prison, that those particular facts bear importance and bear mentioning or discussion. And I reserve the rest of my time, so. You may have it, Mr. Thomas. Mr. Silverman. Thank you, Your Honor. May it please the Court. Mark Silverman. I represent the United States in this appeal. Under Chavez-Mesa. Were you the AUSA at sentencing? I was not, Your Honor. Okay. I have inherited this matter. Lucky you. Very much so. It's always a pleasure to come down. Under Chavez-Mesa, Judge Thompson acted within his discretion in using the AO form to explain the reduction in Mr. Sadio's sentence from 20 years to 16 years. Indeed, for two reasons present in this case, the circumstances of this action provide a more straightforward analysis than even that in Chavez-Mesa. First, Mr. Sadio's conduct after his sentencing is materially worse than the defendant in Chavez-Mesa. And second, Judge Thompson decided to enter a reduced sentence along proportional grounds. For those two reasons, this case falls well within the ambit of the Supreme Court's reasoning in Chavez-Mesa, tackling them in order. First, Mr. Sadio and Mr. Chavez-Mesa both completed a number of Bureau of Prison programs and courses and undertook other positive steps while in custody. But where Mr. Chavez-Mesa violated one prison disciplinary rule for improperly using another inmate's phone number, Mr. Sadio on four occasions refused his work or programming assignment with the result of ending up in disciplinary segregation for more than one year. Wouldn't it have been helpful to us if Judge Thompson had just said that to us? Of course. And there's no dispute from the government that it may be a better practice to provide an explanation whenever a sentence reduction decision is made. But Chavez-Mesa has made it clear that the law does not require such an explanation in all circumstances. And in that way, it reinforced this Court's 2013 decision in Christie that not all failures to explain will require a remand. So here, it's the government's position that it's apparent from the record and the circumstances of this case why Judge Thompson reduced Mr. Sadio's sentence by four years as opposed to six years. One, and the primary reason, is that Mr. Sadio's post-sentencing conduct didn't change the scales with respect to Judge Thompson's original concerns that Mr. Sadio needed to be specifically deterred. At the original sentencing, Judge Thompson emphasized his record, which included at that point six prior felony drug convictions, two firearm convictions, and a number of violations of probation, as well as other aggravating factors, including the possibility that Mr. Sadio had lied to a state court judge in 2008 at the time of sentencing, and that Judge Thompson himself had approached Mr. Sadio's own representation skeptically. Given that backdrop, the fact that Mr. Sadio continued to have persistent disciplinary difficulties incarcerated while serving his federal sentence, and in particular, shortly before Judge Thompson acted on Mr. Sadio's motion, he had sustained one disciplinary citation for fighting and another disciplinary citation for stealing, that those concerns about specific deterrence had not been alleviated, that they remained in full force. So the fact that Judge Thompson decided to reduce the sentence from 20 years, which had been the midpoint, slightly above the midpoint of the original guidelines range, to 16 years, slightly above the midpoint of the reduced guidelines range, is enough for this Court to know what Judge Thompson was doing, what rationale was underlying his sentence reduction decision. So in the circumstances of this case, it's the government's view that no additional explanation beyond checking the relevant boxes and filling in the relevant blanks in the AO form was required. Given those two factors, Mr. Sadio's post-sentencing conduct and the proportionality of the reduction, this Court should affirm Judge Thompson's sentence reduction order. In the absence of any . . . Just to follow up on Judge Parker's question earlier, opposing counsel, is the extent of the commentary in the first sentencing relevant to that? In other words, if Judge Thompson had given a shorter statement of reasons in his oral pronouncement of sentence, would that make it more problematic than the . . . except for kind of the 3553A factors, there's like three pages where he talks about still selling from his house when his parents were there and everything else, right? Yes, Your Honor. I think the fact that Judge Thompson's explanation at the original sentencing was so fulsome is relevant and it is helpful in assessing whether he still believed there was a need for specific deterrence at the time he entered the sentence reduction order. If Judge Thompson's explanation had been more terse at sentencing, this may present a different set of circumstances. Here, though, given the fulsomeness of that explanation, Mr. Sadio's conduct after having been sentenced and then the proportionality of the reduction, it's clear what Judge Thompson was doing. Under Chavez-Mesa, this Court should affirm. There are no further questions. We'll rest in our brief. Thank you. Thank you, Mr. Silverman. Mr. Thomas, how far along is your client in his sentence now, just out of curiosity? I don't know the answer to that off the top of my head. I'm sorry. We'll look it up. I don't know about reductions for time or anything like that, but he went in in 2010 and he's doing 16 years, right? That sounds right, Your Honor. Okay. I want to start off by addressing the distinction between Chavez-Mesa and this case. In Chavez-Mesa, the focus at the original sentencing was the seriousness of the criminal conduct. What the district court was saying was that methamphetamines are very dangerous. They're destructive to the community. This is why I think the sentence is appropriate. That was its primary consideration. So the things that Chavez-Mesa did while in prison really weren't animating the district court's decision when it was ruling on the sentencing reduction motion. I think that's very different than the case here where what . . . filling out the AO form are good enough. There are cases where they're good enough, but there are cases when they are not. When does the district court judge have to do more than fill out the AO form? I would suggest that the district court judge has to do more than fill out the AO form when the focus at the original sentencing was the risk of recidivism, and we submitted numerous briefings on the particular individual's conduct while in prison that bears on that most important factor. But there was countervailing evidence presented, too. Maybe you're right if it was just he's been a choir boy since he went to prison, but the addenda to the PSR say, well, that's not really true. He just spent a year in SEG, for example. That's correct, but I think there are a number of factual inferences that you could draw from that, and because it is a question of fact and questions of fact are what district courts are supposed to decide and they're supposed to articulate how they resolve them to permit meaningful appellate review, I think that actually cuts our way. In support of my argument, I submitted a 28-J letter. The Fourth Circuit recently decided a case which adopts a very similar rule, that you rebut the presumption that the AO form is not sufficient when, in fact, you submit additional evidence in regards to rehabilitation or a particular person's conduct in prison. So in that case, despite it being a proportional reduction, they sent it back down for additional reasons. I'd also quickly like to address, the government cited one case from the Third Circuit in its own 28-J letter, Johnson. In that case, the court held that no further reasons were required because the district court provided a paragraph . . . In terms of resentencing, your client had gotten a letter from the prison chaplain that said, notwithstanding these disciplinary matters, I've dealt with him, and he's a changed man. Would the court have to put the chaplain on the stand and have him or her cross-examined? What's supposed to happen in that circumstance? I believe the district court would be able to make a decision based on the papers alone, but to permit . . . Why couldn't they do it here? He could do it on the . . . You have . . . I'm sorry, go ahead. He could do it on the papers alone. That's not the issue. The issue is whether he explained himself enough to permit meaningful appellate review, which includes reviewing for clearly erroneous findings of fact. And the issue is that we still have a continuing factual dispute about that. How do you make a finding of fact about the probability of recidivism? It's a difficult issue, but district court judges do it all the time. A fact that can be found. Wouldn't you agree with that? Definitively, yes. But the district courts are required by Congress to make these findings all the time in every sentence. But that's based on the whole record, isn't it? It is, and occasionally district courts do abuse their discretion by making clearly erroneous findings of fact. We just decided there's nothing you can make a finding of fact about. It's a judgment born of, you know, intuition and experience. Well, if the district court had based its finding of fact on facts that were not in the record, if it articulated a . . . It was thinking of one of Mr. Cedillo's co-defendants and wrote out that Mr. Cedillo had 10 disciplinary tickets as opposed to the six that were in the record, that would be a clearly erroneous finding of fact on which it was basing its prediction about the person's likelihood to recidivate. I've run out of my time. So what if Judge Thompson had said something as simple as I've considered the record and based on that I find that . . . Sorry, I am not persuaded that Mr. Cedillo has overcome the concerns that I had when I initially sentenced him and then checked the form. I believe that would be sufficient. All we're asking for is a sentence or two to tell us more about the district court's . . . How are we supposed to review that, though? And what would you be arguing to us was . . . I'm curious because you guys deal with these all the time. How would you argue to this court that that was a clearly erroneous finding meriting some remand to the judge to do it over? You wouldn't, right? It would be very difficult to do. I'd have to think about it more. All right. Thank you. Thank you. Thank you both. The final case, Walker v. Corazon and Dr. John Doe, is on submission. So I will ask the clerk, please, to adjourn court. Thank you both. And thank you, Mr. Thompson, for speaking for this man.